Dear Ms. Cole:
This is in response to your request for an opinion concerning public use of river banks.
You ask whether or not the public has the right of use of the bank of a navigable river for purposes such as diving into the river for swimming or digging chutes into the bank to slide into the river for swimming. Additionally, you ask, what, if any, liability might attach to the riparian land owner for injuries sustained by canoers who are diving or sliding into the river from the bank to swim. Finally, you ask whether the bank includes the bluff above the area contained between ordinary high and low water on a navigable river.
It would appear that the problem faced by riparian owners arises out of a public perception that river banks may be used for all purposes, and not just those incidental to navigation. This area has been the subject of numerous prior opinions of this office, and they have reached the same general conclusions.
Article 456 of the Civil Code provides that river banks are private, but subject to public use, as follows:
 The banks of navigable rivers or streams are private things that are subject to public use.
 The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. Nevertheless, when there is a levee in proximity to the waters, established according to law, the levee shall form the bank.
Therefore, while the bank is privately owned, it is subject to a servitude of public use for purposes incidental to navigable character of the river and its enjoyment as an avenue of commerce. See State v.Richardson, 140 La. 329, 72 So. 984 (La. 1916). For a more expansive treatment of this subject, see also Atty. Gen. Op. 96-257, copy attached.
The jurisprudence of our state has clearly restricted the use of river banks to purposes incidental to navigation and not other unrelated uses. For instance, see the following: Pittsburgh Southern Coal Co. v. OtisMfg. Co., 249 F. 667 (US 5th Cir. 1918), holding that the rights which the public in Louisiana has to use the banks of navigable rivers does not entitle one other than a riparian proprietor to appropriate part of the bank to his private use; Chinn v. Petty, 163 So. 735 (2d Cir. 1935) holding that while the public has the right to the use of the banks of a navigable stream for purposes incidental to navigation, it has no right to appropriate such land to private use for the erection of permanent dwellings; Delta Securities Company v. Dufresne, 181 La. 891, 160 So. 620
(La. 1935) holding that the use of the bank must be incidental to the use of the river, and the public does not have unrestricted access to the bank for all purposes, such as camping or hunting; Tenneco Inc. vs. Oil,Chemical Atomic Workers Union, 234 So.2d 246 (4th Cir. 1970), holding that picketing on the levee was a private use by one not a riparian owner of the property and was not incidental to commerce or navigation on the river and therefore not protected by statutes affording the public use of banks of navigable rivers or streams; and Parish of Jefferson v.Universal Fleeting Company, 234 So.2d 88 (4th Cir. 1970), holding that the servitude of public use placed upon the riparian owners of batture land is limited to uses incidental to the nature and navigable character of the waterway washing such land.
Consequently, diving from the bank, sliding down the bank, digging chutes in the bank to slide into the river and other such recreational activities are not truly incident to navigation and to the navigable character of the stream and its enjoyment as an avenue of commerce. Such uses are therefore not sanctioned by the Civil Code as against the riparian owner of the bank. Said another way, the use of the bank pursuant to the servitude of public use provided by the Civil Code is not "for the use of the public at large for all purposes, but merely for purposes that are "incidental" to the navigable character of the stream and its enjoyment as an avenue of commerce." See State v. Richardson, and Chinn v. Petty, supra.
This opinion is consistent with prior opinions of this office, including Atty. Gen. Op. June 11, 1938 to Honorable Newt V. Mills, member of Congress; Atty. Gen. Op. Nos. 82-102, 87-526, 88-531, 90-663 and 96-257.
In consequence of finding that the proposed uses of the bank are not within the servitude afforded the public, it is not necessary to discuss the liability of the riparian land owner under the question as posed. However, you are referred to the Louisiana Recreational Use statutes, found in the Louisiana Revised Statutes as La.R.S. 9:2791 and 9:2795 as regards liability of the landowner.
Your final question asks whether the bank includes the bluff above the area outside of the bank above ordinary high water, which, as phrased, we answer in the negative. See Civil Code Article 456, supra.
We hope this opinion is of assistance to you and if we may be of further help, please advise.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: __________________________ GARY L. KEYSER Assistant Attorney General
RPI/GLK/tp
Enc.
OPINION NUMBER 96-257
September 5, 1996
Honorable Herman Ray Hill State Representative District 32 529 Tramel Road Dry Creek, Louisiana 70637
Dear Representative Hill:
This is in response to your request for an opinion of this office concerning public use of navigable rivers and their banks.
Your questions are stated as follows:
 1. Can the public fish from the banks of a navigable river or while wading in such river without the necessity of first obtaining permission from the property owner of the river banks?
2. Would such fishing be considered trespassing under current state law?
 3. Under the same and other applicable provisions of present law, can the public be denied access to a navigable river by the property owner of the river banks?
 4. If there is a public road on the property, to what extent, if any, can the property owner post the land and prevent access to the river?
 5. Does existing law applicable to questions 1, 2 and 3 above contain language conflicts or ambiguities as interpreted by the courts that could be addressed through proposed legislation?
While your questions are specifically stated, a succinct response and explanation of the several different legal issues is made difficult because of the rules of law provided by the Civil Code and jurisprudence of our state. A discussion is also complicated by recent legislative revisions which conflict with commonly perceived notions of the public based upon historic practices which do not have universal application to all water bodies and which, in some measure, no longer have support in the law.
One of the these misplaced perceptions is that the banks of all naturally navigable water bodies which are currently navigable in fact are free and open to public usage for purposes such as fishing, hunting, camping, wading and other recreational activities. As in the case where the public is allowed to hunt in privately owned woods and timberland, there is a perception that the public has the free use of the banks of a body of water based upon rights created over time or by operation of law. That is, there is a public expectation by those who have hunted in a particular area or fished from the banks of a particular body of water that there is a continuing right to do so, even without permission of the riparian owner.
An effort will be made to briefly explain the legal underpinnings of Louisiana law and the rights, duties and obligations which flow from the law and jurisprudence.
Consideration will first be given to the issue of the right of the public at large to have access to rivers and streams. In this regard, Article 455 of the Louisiana Civil Code presently provides that "private things may be subject to public use in accordance with law or by dedication."
Thereafter, Article 456 of the Civil Code provides that river banks are private, but subject to public use, as follows:
 The banks of navigable rivers or streams are private things that are subject to public use.
 The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. Nevertheless, when there is a levee in proximity to the water, established according to law, the levee shall form the bank.
Prior to the amendment of Article 455 by the Legislature in 1978, the Civil Code contained emphatic language declaring the use of banks of navigable rivers and streams to be "public" in nature, along with illustrations of the uses to which the public might make of the bank, including the "right fully to bring his vessels to land there, to make fast the same to the trees which are here planted, to unload his vessels, to deposit his goods, to dry his nets, and the like.[1] Such uses of the bank have been recognized since pre-statehood times as incident to the navigable character of rivers and streams, and imbedded in the Louisiana Civil Code by its redactors from the inception.
In its amendment of the article, the Legislature appears to have greatly reduced the rights of the public to the use of the bank, and the illustrative uses for the public at large were eliminated. The revision comments to the article now state that the use is not "for the public at large for all purposes, but merely for purposes that are "incidental" to the navigable character of the stream and its enjoyment as an avenue of commerce'. See Art. 456, Comment (b). This would seemingly include the previously prescribed uses, though they are no longer so stated in this article, thereby bringing some uncertainty to this area of law as far as particular activities are concerned, such as docking a vessel at the bank for purposes of loading or unloading, for the drying of nets, the making of repairs and similar activities related to the navigable character of the stream.[2] There is no known post-1978 jurisprudence which interprets the re-stated articles of the Civil Code insofar as these particular uses are concerned.[3]
With respect to the question of fishing from the banks or wading in the river without obtaining permission from the riparian owner, the courts have found that under present law, hunting and fishing from the bank are not uses which are incident to the navigable character of the stream and, therefore, not rights pertaining to the bank servitude.[4] As a consequence, the public at large is not free to utilize the banks of a navigable river or stream for hunting, fishing or recreational purposes without permission of the owner.
As to the second part of question No. 1, can the public wade in the river without the necessity of obtaining permission from the property owner of the riverbanks, the Civil Code provides that the ownership of public things include the "running waters, the waters and bottoms of natural and navigable water bodies, the territorial sea, and the seashore".[5]
In the case of naturally navigable water bodies, the public has a perfect right to use the water and water bottoms for all traditional purposes related to navigation and to include both recreational and commercial activities, such as fishing, swimming, wading, tubing, crabbing and similar pursuits.
As to non-navigable waters, the public has a right of access and use to "running waters" pursuant to the cited provisions of law, Civil Code Article 450. The Louisiana Supreme Court has held that while "public things that belong to the state are such as running waters, * * *", they may its use by the general public. In Chaney v. State Mineral Board[6], the Supreme Court analyzed the juxtaposition of private things, such as the river bank, which is subject to the public servitude of use, as discussed above, and public things. The Court concluded that while a non-navigable river or stream is a private thing, belonging either to the riparian owner or the state, the water which traverses the private bed is a public thing and subject to public use which may not be interfered with or prevented by the riparian owner. The language of the Supreme Court in Chaney was fairly explicit; nonetheless, in later decisions other courts have avoided discussion or application of the stated principle of law recited by our state's highest Court. Even in State v. Baras, footnote #4, there is no reference to the prior decision. Also, Blanchard v. Williams, Inc., U.S. District Court, W.D. of La., Civil Action No. 92-0941, while citing Baras, avoids Chaney. Also, Dardar v. Lafourche Realty, 985 F.2d 824 (5th Cir. 1993), makes no mention of Chaney, although provided with an excellent opportunity to do so.[7] Of course, in these cases, the relevant issues dealt with navigational rights as opposed to the more limited issue of the use of running waters.
In Chaney, a possessory action by private parties against the State Mineral Board and State of Louisiana, the Supreme Court addressed the issue of whether the public could undertake activities such as fishing, swimming, wading, tubing, stone skimming, digging for clams and even baptizing church members in the bed of a formerly navigable but currently non-navigable river, the Amite. Finding that the Amite in this segment was non-navigable, the Court concluded that it had entered the private ownership of the State, as distinguished from the public domain, but nonetheless that "the water which traverses that private bed is a public thing" under Civil Code Article 450, at page 109. To this extent, the case would seem to sanction the use of running waters even on a privately owned non-navigable river or stream, whether owned by the State or private persons. Thus, no permission of the owner would seem to be required unless the area was clearly marked by fences, signs or monuments as being private and posted, as discussed by the Court.
As regards Question No. 2 above, whether fishing from the banks of a navigable river may be considered trespassing under current state law, we must answer in the affirmative if such fishing takes place on privately owned banks. As discussed above, hunting and fishing activities on the banks are not incident to the navigable character of the stream as determined by all known court decisions to this time, and the historic language of the previously existing Article 455 making the banks of navigable rivers and streams "public", has been eliminated.[8]
As the Question No. 3, can the public be denied access to a navigable river by the property owner of the river banks, we must also answer in the affirmative. While the banks of a navigable river or stream are subject to the bank servitude, there is no legal duty on the part of the riparian owner to provide ingress or egress to the water unless a roadway or right-of-way has been dedicated in accordance with law.[9]
It should be noted that Civil Code Article 666 provides that riparian owners are bound by law to give a public road on the border of a river or stream, and if the road be so injured or inundated by water that it is not passable, such owner must give the public a passage on his lands as near as possible to the public road without recompense therefor. R.S.9:1251 provides that when an owner of land voluntarily, whether expressly or tacitly permits passage through or across his land soley for the purpose of providing a convenience in ingress and egress to and from waters for boating or recreational purposes, neither the public or private person shall acquire a servitude or right-of-passage, nor shall the passage become a public road or street by reason of upkeep, maintenance or work performed by any governing authority. This latter statute reaches conflict with R.S. 48:491 in situations where a roadway has become dedicated by public funded maintenance activities.
With regard to Question No. 4, whether a property owner may post land and prevent access to the river if there is a public road on the property, we must also answer in the affirmative if the public road does not traverse the private property to the water's edge. That is, we are not aware of any Civil Code, statutory or jurisprudential rule of law which would require a riparian owner to allow the public ingress and egress from a public highway to the water's edge where there is no road, public right-of-way or public passageway connecting the two. For instance, in the case of riparian farmlands traversed by a public highway, there is no duty to allow the public access across the farmlands from the highway, or even from a public road on top of a levee to the river's edge, absent compliance with La.R.S. 48:491 or one of the other methods of dedication discussed above.
As respects Question No. 5, whether or not existing law applicable to Questions 1, 2 and 3 contains language conflicts or ambiguities as interpreted by the Courts, we also answer in the affirmative.
For the reasons stated in the foregoing discussion, there is a lack of clarity in the Civil Code and jurisprudence concerning public rights of access and use of navigable rivers and streams for the various purposes discussed. As stated in Article 456 of the Civil Code, the banks of navigable rivers or steams are private things subject to public use insofar as such uses are related to the navigable character of the stream, but the bank servitude does not include hunting, fishing and similar recreational uses. While extensive legislative revision of this area has already occurred, further revision would be permissible. It is certainly clear that the practice of public fishing from the banks of navigable rivers is one of an historic nature. Thus, there is an obvious and apparent conflict between long-standing public expectations and the guaranteed but limited uses of the banks of navigable rivers provided by law. See footnote #2.
Similarly, the activities discussed in Chaney, supra, such as fishing, swimming, wading, tubing, stone skimming, digging for clams and even baptizing church members are not given unction by codal law, except to the extent that Article 450 provides that running waters are "public things" for use by the public-at-large. The public would seem to be entitled to the use of running waters of non-navigable streams as enunciated by the Supreme Court in Chaney, but this would no doubt create conflict with private riparian owners in many instances.
For these reasons, there are conflicts or ambiguities in the law which are susceptible of change or remediation by legislation. of course, this is an area of law with complex overtones and corrective or remedial legislation could be controversial in scope.
We hope ibis opinion is of benefit to you and if we may be of further assistance, please call upon us.
Yours very truly,
 Attorney General RICHARD P. IEYOUB
 BY: ________________________________ GARY L. KEYSER Chief, Lands Natural Resources
RPI/GLK/bb
[1] These provisions derive from the restatement of Article 455, which provided as follows prior to its 1978 amendment:
 455 Navigable rivers and streams — Banks — The use of the banks of navigable rivers or streams is public; accordingly every one has a right freely to bring his vessels to land there, to make fast the same to the trees which are there planted, to unload his vessels, to deposit his goods, to dry nets, and the like.
Nevertheless the ownership of the river banks belongs to those who possess the adjacent lands. (Emphasis ours)
[2] The uncertainty surrounding public use of the river bank may be illustrated by reference to comments made on the subject by doctrinal authorities and from the 1978 revision comments, to wit.
 "The Louisiana Civil Code may be taken to mean that the general public has a right of free passage over the banks of navigable rivers in their natural state."
Yiannopoulos, 2 La. Civ. Law Treatise § 85, 178 (3d Ed. 1991); and
 "The right to dry nets is practically meaningless today in most of Louisiana's navigable rivers. Vessels may be temporarily moored to the banks of navigable rivers, but there is strong doubt that this may be done "freely" as Article 455 (1870) declares. The rights of the general public to unload vessels and to deposit goods may be clearly exercised in public landings or other facilities, but it is questionable whether these rights may be exercised in all banks."
 Revision Comment (b), Art. 456
 Thus, the public may be legally entitled to free passage over the banks of a navigable river, and to use the banks for traditional purposes related to the navigable character of the stream, as provided by law, but may be prohibited as a practical matter from doing so by riparian landowners exercising control of the banks for their own purposes.
[3] As stated in the text above, the illustrative uses of the bank included within Article 455 of the Civil Code as it existed prior to 1978 were eliminated, along with the language making the use of the bank public in nature. However, other articles were also substantially revised. The language of Articles 452 and 453 received revision, and the language pertaining to the use of the seashore (Art. 452) and the definition of public things (Art. 453) were combined so as to provide that the public has the "right to fish in the rivers, ports, roadsteads and harbors, and the right to land on the seashore to fish, to shelter himself, to moor ships, to dry nets and the like, provided that he does not cause injury to the property of adjoining owners". As in the case of Article 455 prior to the 1978 revision, public rights were greatly reduced in the revised Article 452, since prior to revision, public use of the seashore included the right of the public to "build cabins thereon for shelter, and likewise to land there, either to fish or shelter himself * * * from the storm, to moor ships, to dry nets and the like * * *". Following the revision, the right of the public to "build cabins, thereon for shelter" was eliminated, a result which probably aids the public more by preventing usurpation of the seashore by a few, as balanced against a true need for occasional shelter from the elements through such means by the unlucky mariner.
[4] The Courts have not squarely addressed the basic issue of the extent of the bank servitude as relates to navigational purposes and commerce, and the most recent cases deal with hunting, fishing and crawfishing on batture, overflowed, and swamplands. See Warner v. Clark,232 So.2d 99 (2nd Cir. 1970) writ denied 233 So.2d 565; Edmiston v. Wood, 566 So.2d 673 (2nd Cir. 1990); State v. Baras, 615 So.2d 285 (La. 1993). See also, C.C. Art. 456 (1978 revision). Yiannopoulos, La. Civil Law Treatise, Vol. II, Property, Sections 56-61, 85 (3rd Ed., 1991). In the Warner case, the legal issue concerned lands adjacent to and between the Mississippi River levee and the river itself, including various small lakes and ponds, used by the public for hunting and fishing. The Court held that the right to hunt and fish on these lands was unrelated to the navigable character of the Mississippi River and, thus, impermissible without consent of the owner. In Edmiston, a similar dispute concerned private lands overflowed at high water adjacent to Yucatan Lake, a cut-off loop of the Mississippi, utilized by the public for duck hunting when the back waters of the Mississippi flooded fields used for hay and agricultural crops. Again, the Court held that such privately owned land did not become subject to public use merely by reason of overflow at times of high water. Baras concerned a criminal prosecution of crawfisherman trespassing on privately owned swamplands overflowed annually by high water within the Atchafalya Basin, with the Court reaching the same conclusion as in the other cases: private lands subject to overflow are private things.
[5] Art. 450. Public things.
 Public things are owned by the state or its political subdivisions in their capacity as public persons.
 Public things that belong to the state are such as running waters, the waters and bottoms of natural navigable water bodies, the territorial sea, and the seashore.
 Public things that may belong to political subdivisions of the state are such as streets and public squares.
[6] In Chaney, the Louisiana Supreme Court held:
 On the one hand, the bed and bottom of a non-navigable river or stream is a private thing belonging either to the riparian owners or the state (depending upon whether it was originally non-navigable or navigable — see Wemple v. Eastham, 150 La. 247, 90 So. 637 (1922). On the other hand, the water which traverses that private bed is a public thing. ("Public things that belong to the state are such as running waters, . . ." La.C.C. art. 450). As such, the riparian owner may use the running water for his purposes, but he may not interfere with, nor prevent, its use by the general public. La. C.C Arts. 657 and 658. Yiannopoulos, 2 La.Civ. Law Treatise § 36, 99 et seq. (2d ed. 1980). Therefore the possessor of the bed, or owner for that matter, may not fence or enclose the "land" so as to impede the use of the flowing water. Chaney v. State Mineral Board, 444 So.2d 105, 109 (La. 1983).
[7] The United States Code, 28 U.S.C. 1652, provides that the laws of the states shall be regarded as the "rules of decision in civil actions in the courts of the United States, in cases where they apply", except where the constitution or treaties of the United States or Acts of Congress require otherwise. This means that the federal courts are required to follow the rules of law of the states within which they sit as the rules of decision in cases which come before them.
[8] Some cases have squarely held that "public use" of the banks means precisely that, to the extent that even a riparian landowner is forbidden to make such works on the bank or to so obstruct it as to prevent the exercise of public rights to the bank itself. For instance, see Town of Napoleeonville v. Boudreaux, 142 So. 874 (1st Cir. 1932), holding that an adjacent owner could not use the bank of the navigable stream within the town as private property for the erection of a building. See Yiannopoulos, 2 La. Civ. Law Treatise § 34, 106 et seq., (2nd ed. 1980) Other cases have reached varying results, depending upon the underlying facts, particularly with the passage of time and the increased pressure for use of the banks. See, for instance, Lake Providence Port Commission v. Bunge Corporation. 193 So.2d 363 (2d Cir. 1966).
[9] There are certain methods by which a road may become a public road. Civil Code Article 457 provides that "a public road is one that is subject to public use". The public may own the land in which the road is built or merely have the right to use it. Public roads may become such by designation as pert of the state highway system (La.R.S. 48:191); by designation as part of the parish highway system (La.R.S. 45:471-760); or by tacit dedication to the public use by three years maintenance by a public body (La.R.S. 48:491). Additionally, a roadway may become public in nature by a statutory dedication, as in the case where a subdivision developer dedicates roads and streets in a proposed subdivision by substantial compliance with La.R.S. 33:5051, in which case ownership vests in the public. In many instances, roadways which were commenced simply by a long history of usage and ultimately continued by parish maintenance have resulted in tacit dedication to the public pursuant to La.R.S. 48:491. See, for instance, Lincoln Parish Police Jury v. Davis,559 So.2d 935 (2d Cir. 1990); Wise v. Key, 445 So.2d 98 (2d Cir. 1984); Herring v. Guitreau, 619 So.2d 1161 (1st Cir. 1993); Moret v. Williams,582 So.2d 975 (1st Cir. 1991). For a thorough discussion of the various modes of dedication, see Garrett v. Pioneer Production Corporation,390 So.2d 851 (La. 1980).
Dear Representative Cain:
You have asked this office to advise you as to what constitutes a navigable stream or river in this state. In addition, you have asked this office to advise you as to the low and high water mark on such a waterbody.
You have further advised that because of the new trespass laws recently enacted, some people have posted the banks of streams and rivers denying access to the waterbodies and even restricting people from the use of picnic tables thereon.
Because of the nature of your inquiry, we will expand our advice to include not only the specific two (2) questions asked, but also the nature of public access to rivers and streams in this state and the publics right to use the banks thereof.
The waters and bottoms of natural navigable waterbodies, including rivers and streams, are public things owned by the state as a public person. La.Civ. Code art. 450. As such, natural navigable waterbodies are subject to public use. La.Civ. Code art. 452. A waterbody is considered to be navigable if it was capable of being utilized in its natural condition as a highway of commerce in the customary mode of trade and travel, of 1812. Ramsey River Road Property Owners Association, Inc. v. Charles E. Reeves. et al, 396 So.2d 873 (La. 1981). Whether a particular waterbody is navigable is a question of fact which must be taken on a case by case basis and there is really no way to tell whether a particular river or stream is considered navigable in law until the facts of that particular case are taken into account.
Nevertheless, it a particular river or stream is considered navigable, then the state owns the bed and bottom thereof from the ordinary low water mark on one side to the ordinary low water mark on the other side. Smith v. Dixie Oil Co., 156 La. 691, 101 So. 24 (1924). The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. La.Civ. Code art. 456.
The bank is privately owned but subject to a servitude of public use incidental to the navigable character of the river and its enjoyment as an avenue of commerce. La.Civ. Code art. 452: State v. Richardson, 140 La. 329, 72 So. 984 (1916).
Accordingly, although a river bank is subject to a public servitude, the public does not have unrestricted access to the bank for all purposes. The use of the bank must be incidental to the use of the river and it is doubtful that activity such as picnicking would be permitted. For instance, previous decisions have indicated that the public does not have the right to camp on the banks or hunt thereon. See: Delta Securities Company v. Dufresne, 181 La. 891, 160 So. 620 (1935).
Likewise, a riparian landowner may restrict access to the banks of navigable rivers and streams where the public must cross private property in order to reach the river's edge. Pizanie v. Gauthreaux, 173 La. 737,138 So. 650 (1932).
Therefore, from our reading of the many cases rendered in this area, it is our opinion that the public may not utilize the bank of a river or stream for any activity other than activity incidental to the navigable character thereof. Nevertheless, the actual use of a navigable river or stream itself for transportation cannot be restricted by the riparian landowner(s).
Moreover, although the public has no right whatsoever to the bank of a non-navigable river or stream, it has been previously held by the Louisiana Supreme Court that the public has a right to utilize the running waters thereof and may therefore, in our opinion, traverse a non-navigable river or stream and utilize same for transportation. See: Chaney v. State Mineral Board, 444 So.2d 105 (La. 1983); La.Civ. Code art. 450.
Thus, the public has a right to utilize both navigable and non-navigable rivers and streams in this state. However, the public does. not have an unqualified right to utilize the banks of navigable rivers or streams except for purposes incidental to the navigation thereof. In addition, the public does not have a right in any case to use the bank of a non-navigable stream since that bank is a private thing not burdened with a public servitude of use.
As stated above, the bank is considered to be that area between the ordinary low and ordinary high water mark of a river or stream.
There is no precise definition of where a low water mark and high water mark are located on a particular waterbody except that where there is a levee in proximity to the water, the levee forms the bank. La.Civ. Code art. 456.
The ordinary water marks, whether high or low, are determined by gauge readings taken over a period of time and then averaged to find an ordinary or mean mark. This is done for both high and low water. In addition, many technical experts also use vegetation lines to determine where high water is located since there are many species of plants that will not grow where they are regularly inundated by high water.
These methods, commonly accepted by the court, must be taken on a case by case basis depending on the particular river or stream involved. We therefore cannot advise you regarding a set rule other than the general statements just expressed.
Consequently, ordinary low and high water marks are determined by technical study taking into account gauge readings, vegetation lines, and other methods commonly used by licensed surveyors and civil engineers.
 If we can be of further service in this matter, please advise.
 Very truly yours,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: ___________________________ DAVID C. KIMMEL Assistant Attorney General
DCK/vrr
OPINION NUMBER 88-531
November 10, 1988
R.S. 49:213.1 et seq. Art. 456, La. Civil Code 45-B Environmental Affairs 45-C Environmental 72 Navigable Waters 90-B-3 Public Lands — Public Private Domains, Distinctions 172 Waters and Water Courses 172-B Waters — Natural Resources
A project involving the construction of sheet piling as a protective bulkhead and the filling of an unimproved barge slip on private property adjacent to and forming a part of the bank of Bayou Boeuf, the boundary of Louisiana's coastal zone, is legally within the statutorily defined boundaries of the coastal zone and is subject to the State and Local Coastal Resources Management Act of 1978, and a permit is required for such proposed coastal uses as defined by statute,
Mr. Raymond W. Stephens, Jr. Secretary Louisiana Department of Natural Resources Post Office Box 94396 Baton Rouge, LA 70804-9396