Statement of the Case.
MONROE, J.
Plaintiff alleges that she acquired from the United States the fractional S. Yz of the S. W. % of section 3, township 20, range 16, but that it was erroneously described as the S. E. % of the S. W. % of said section, and the survey, field notes, and plat returned by the surveyor erroneously showed that it contained 39 acres, whereas the tract acquired by her contains a larger acreage; for, as shown by said plat of survey, it borders on Ferry Lake and its tributary waters, navigable streams of the United States, and said waterways were and are the boundary; and she is entitled to take all the land in the fractional S. Yz of the S. W. % of said section aforementioned. She makes the plat of survey part of her petition, and further alleges that she owns and is in possession of all the land in said S. Yz of the S. W. Y± of said section 3 to the high-water boundary of Ferry Lake and Jeems Bayou and its tributaries; and that said land has not been formed since the survey of said fractional quarter section by the government surveyor. She further alleges, in the alternative, that, if the court should hold that that part of the land in the S. Yz of the S. W. % of said section, to high-water boundary, in excess of 39 acres, did not pass to her, “but was land formed since the said survey,”"then and in that event, it was so formed by a permanent recession, dereliction, or accretion by the waters of Ferry Lake and its tributaries, and she is entitled to it as riparian proprietor. She alleges that defendant is slandering her title to said land and is asserting title thereto in itself; and that it is necessary to a proper decision of the matter that an actual survey of the land should be made. She prays that defendant be cited and—
“for judgment recognizing and quieting the title and possession of your petitioner to said land, and ordering the slander of her title and possession, as aforesaid, to cease; that a surveyor be appointed to survey said land; and that a commission issue to the parish survey- or directing him to make a survey of same and due report and return thereof make, according to law, with map, field notes, etc., showing high-water boundary of the land, indicating the meander line or shore of the lake or bayou at high-water mark, including the accretion along the bayou, if any, which is a navigable stream.”
The order appointing the surveyor and directing him to make the survey and report as prayed for appears to have been made ex parte on the filing of the petition, after which defendant answered, denying plaintiff’s alleged possession, setting up possession in itself, alleging that “said land was granted to it by the state of Louisiana by Act 74 of 1892 and Act 160 of 1900, * * * and * * * has been duly certified and transferred,” and praying “that plaintiff’s demand be rejected, and, in the event plaintiff is in the actual and lawful possession of said land, that v * * plaintiff’s demands be rejected, and it be deemed the owner of said lands.” It appears from the evidence'that in 1896 plaintiff made original homestead entry No. 6,630 for “the S. E. Yi of the S. W. Yá of Sec. 3, T. 20 N., R. 16 W., La. Mer., containing 39 acres”; and that on May 27, 1902, she received a patent from the United States for the “southeast quarter of the southwest quarter of section three, in township twenty north, of range sixteen west, of Louisiana meridian, in Louisiana, containing thirty-nine acres, according to the official plat of survey of the said land, returned to the General Land Office by the surveyor general” (a rough copy of which plat of survey, or so much of *420 it as is here required, will be attached to this opinion as “Sketch 1 ”). In 1901 John A.

Russell made a homestead entry for the W. 14 of the S. W. 14 of said section 3, together with other tracts, and in 1905 a final homestead certificate was issued therefor to his heirs. Later in the same year, however, the Commissioner of the General Land Office, by office letter to the register and receiver at Natchitoches, held that Russell’s entry conflicted with that of plaintiff, and in January, 1906, the Russell entry was canceled, on the ground that:
“There was no such subdivision, according to the official plat, as W. 14 of S. W. 14 of Sec. 3, and that the entire fractional S. 14 of fractional S. W. 14 was included in the entry and patent in her [plaintiff’s] name.”
The ruling so made will be better understood by comparing the language of plaintiff’s patent with the plat (Sketch 1) to which it refers; for it will thus be seen that, whilst the patent describes the land as the S. E. 14 of the S. W. 14 of section 3, containing 39 acres, “according to the official plat of survey,” etc., the plat itself shows, not a survey of the S. E. 14 of the S. W. 14, as such, but 39 acres of land, lying in the fractional S. 14 of the S. W. 14, partly in what, if surveyed, would be the S. E. 14, and partly in what, if surveyed, would be the S. W. %, of S. W. 14, and bounded on the west (where the S. W. 14 of a complete section would be found) by the waters of a navigable lake or stream. The survey made in May, 1911, for the purpose of this case (and of which the rough and reduced “Sketch 2,” filed with this opinion, *422 will convey an idea), shows that whatever of high land there is (12.10, 3.10, and 1.59 acres) in the S. W. !4 of the S. W. % of section 3 appears to be separated from the main tract of high land in the S. E. % of said S. W. % by navigable water, known as “Cotton Shed Arm” (of Jeems Bayou, as we understand), and, in fact, that a part (3.76 acres) of the high land lying in the fractional S. B. % itself appears to be so separated. It is evident, however, that when the survey of 1839 was made the surveyor found contiguous high land to the eastward and northward of the line A, B, C, D, F, as indicated on sketch 2, the dotted line C, F, having been added by the court; and that that line, or something like it, rather than the “mean high-water” line, established by Barnes & Crawford, some 70 years later, was the water boundary of the 39 acres for which plaintiff received her patent. It is shown that plaintiff has never been in actual possession of any of the land, save that to the eastward of the line D, E, and it is admitted (by her counsel) that “the state owns the bed of Jeems Bayou and the land lying between the mean high-water line and the lower-water line”; but plaintiff denies that the defendant board has ever acquired any “title to the land above mean high-water mark, because the state had none to convey,” and because “the state, through its agents, did not convey, or attempt to convey, such land to the levee board.”

*420

*422 The Acts Nos. 74 of 1892 and 160 of 1900 granted to the defendant board all the lands within the Caddo levee district which then belonged, or might thereafter belong, to the state; and we find in the record a descriptive list and act of conveyance from the register of the state land office and the State Auditor, in which is included the W. % of section 3, township 20, range 16. There is, however, nothing to show that the high land here in dispute was ever selected or conveyed to the state as swamp or overflowed land; and from the testimony concerning it we think it improbable that it was ever within that classification, and equally improbable that it ever formed the bed of any lake or stream. It would therefore appear that the title remained in the United States, save as it may have been conveyed to plaintiff or some other person or persons.
Opinion.
[1-4] Plaintiff’s counsel think that, “the original petition disclosed a jactitation suit, but that same has been converted into a petitory action by the answer of the defendant.” Defendant, however, denies that plaintiff enjoys the possession necessary to the maintainance of a jactitation suit, and prays judgment on its title only in the event that the court should hold otherwise. We are of opinion, the plat of survey with reference to which plaintiff acquired, the ruling of the General Land Office, and the jurisprudence upon the subject considered, that plaintiff must be held to have acquired all the land in the fractional S. % of section 3 which lies to the eastward of the traverse established by the United States surveyor in 1839, together with the tract of 3.10 acres lying contiguous thereto to the westward of said traverse and to the northward of Cotton Shed Arm, all as represented on the plat of survey by Barnes & Crawford, of May 25, 1911. But surveys made under the authority of the United States stop at navigable waters, and a title, predicated upon such a survey, which .shows the banks of a navigable stream as a boundary, cannpt be projected across such stream; the more particularly as the state owns the land below the mean high-water mark and that constituting the bed of the stream, subject to right of the riparian proprietor to the accretion. The ease falls rather within the doctrine of Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 *424 L. Ed. 428, and Mitchell v. Smale, 140 U. S. 413, 11 Sup. Ct. 819, 840, 35 L. Ed. 442, than of Niles v. Cedar Point Club, 175 U. S. 297, 20 Sup. Ct. 124, 44 L. Ed. 171, Live Stock Co. v. Springer, 185 U. S. 47, 22 Sup. Ct. 563, 46 L. Ed. 800, and Land Co. v. Burns, 193 U. S. 167, 24 Sup. Ct. 425, 48 L. Ed. 662; for there is here no question of a meander line which meanders no stream or other body of water, and no question, of a purchaser acquiring land greatly in excess of the call of his patent and of the acreage paid for. The survey upon which plaintiff relies established the actual bank or shore of the lake or stream as one of the boundaries of the tract surveyed; and the few contiguous acres, which were not actually included, were probably omitted because they were difficult of access, and at that time valueless. It is well settled that a i)lat of survey with reference to which land is granted by the United States becomes as much a part of the grant as the patent, and that “it controls, so far as limits are concerned, as if such descriptive features were written out upon the face of the deed itself.” Cragin v. Powell, 128 U. S. 691, 9 Sup. Ot. 203, 32 L. Ed. 566; Jefferis v. East Omaha Land Co., 134 U. S. 178, 10 Sup. Ct. 518, 33 L. Ed. 872. It is also well settled that “a patent for government land, whose boundary is described by a meander line along a small inland lake, conveys strips or tongues of land which project into the water beyond the meander line,” and that such grants, bounded on streams and other waters, without restriction of terms, are to be construed according to the law of the state in which the lands lie.” Hardin v. Jordan, 140 U. S. 371, 11 Sup. Ct. 808, 838, 35 L. Ed. 428; Mitchell v. Smale, 140 U. S. 413, 11 Sup. Ct. 819, 840, 35 L. Ed. 442. As we have already stated, though plaintiff’s patent describes the tract acquired by her as the S. E. y2 of the S. W. y^ of section 3, containing 39 acres, that description is followed by the reference, “according to the official plat of survey,” etc.; and the official plat shows that neither the fractional S. E. % of the S. W. % nor the S. W. % of the S. W. y, of section 3 were surveyed, but that the land surveyed was a tract of 39 acres lying in the fractional S. y2, and mainly in the southeast corner of said section, and bounded on the side towards the southwest corner by the shore of a lake, which showing, we think, controls the language of the patent. As to plaintiff’s possession, we can see no •reason why the rule that possession of part of a tract of land, with title to the whole, is sufficient for the purposes of a possessory action should not be applied in this case, in so far as relates to the tract which we hold to be included in plaintiff’s title. On the other hand, we see no reason why that rule should be extended so as to include land which appears to have been separated by navigable water from the tract acquired by plaintiff, and which was not included in her purchase.
It is therefore ordered, adjudged, and decreed that the demands of the plaintiff as to the tracts of 12.10 acres and 0.07 acre of high land lying to the southward and westward of Cotton Shed Arm, as represented on the plat of survey by Barnes & Crawford, herein filed, be rejected, and her suit dismissed. It is further decreed that, as to the tracts of 3.76 acres, 1.59 acres, and 3.10 acres of high land, designated on said plat of survey as lying to the northward of Cotton Shed Arm, there be judgment for plaintiff, decreeing her to be the owner, and that she be quieted in the possession of the same, and that defendant’s claim thereto be rejected. It is further decreed that defendant pay all costs.