**(90 South. 637)**

**No. 24297.**

**WEMPLE v. EASTHAM et al.**

(Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Navigable waters ⟹37(2)—State owns and may lease bed of stream no longer navigable.**

Where a bayou which was once navigable ceased to be so, the state, having been theretofore the owner of the bed of the bayou, subject to the right of the public to navigate it and to use its banks, had the right to lease it to persons desiring to drill for oil.

**2. Navigable waters ⟹37(2)—"What constitutes bed" of navigable stream which state holds and may lease; "bank."**

The "bed" of a navigable stream—that is, the land which the state holds in her sovereign capacity and can lease to parties desiring to drill for oil—is only the land that is covered by the water in its ordinary low stage, and the land lying between the edge of the water at its ordinary low stage and the line which the edge of the water reaches in its ordinary high stage is called the "bank" of the stream, and belongs to the owner of the adjacent land, subject to the rights of the public to use it to land and unload boats, dry nets, etc., under Rev. Civ. Code, arts. 455, 457.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bank; Bed.]

**3. Waters and water courses ⟹89—Riparian owners have title to middle of nonnavigable stream.**

The beds of streams that are not and never were navigable belong to the riparian owners, to the thread or middle of the stream.

**4. Easements ⟹18(1) — Servitude; inclosed estate not entitled to passage in absence of agreement or judicial decree.**

Owners of an inclosed estate are not entitled to a right of passage unless the parties agree upon its location, and upon the compensation to be first paid, or until location of the servitude and the compensation to be first paid shall have been fixed by a judicial decree, under Civ. Code, arts. 699, 700, 702.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Jr., Judge.

Action by Barney Y. Wemple against Mally Eastham and others. From the judgment, defendants appeal. Judgment annulled in part and affirmed in part.

Hall & Bullock and Wilkinson, Lewis & Wilkinson, all of Shreveport, for appellants.

Elmo P. Lee, of Mansfield, and Hampden Story, of Shreveport, for appellee.

O'NIELL, J. Pursuant to Act 30 of 1915, authorizing the leasing of state lands, in-

cluding river and lake beds and bottoms, for the production of oil, gas, and other minerals, the Governor leased to Mally Eastham, on the 4th of November, 1918, all of the land that the state then owned "within the meandering lines of Bayou Pierre river, and Dolet bayou, in sections 14, 15, 22, 23, 25, 26, 27, 35, and 36, in T. 12 N., R. 11 W., La. Mer." Eastham transferred two-thirds interest in the lease to W. F. Reynolds, and he transferred the same interest, in so far as it affected a part of the lands, to the trustees of the Bayou Pierre Petroleum Company.

Plaintiff owns lands bordering on one side of Bayou Pierre and lands through which Bayou Dolet runs, in sections 14, 15, 22, 23.

Defendants commenced operations for the drilling of a well on the bank of Bayou Pierre, that is, between the ordinary high-water mark and the ordinary low-water mark, and between the upper and lower boundary lines of plaintiff's land. Thereupon plaintiff, averring that the recording of the contract of lease was a slander of his title to the lands forming the banks and beds of the two bayous within his property lines, brought this suit to cancel the lease and to enjoin defendants from drilling wells on the land. Plaintiff contends that the two bayous are not and never have been navigable streams, and that therefore he owns the bed or bottom of the bayou that crosses his land and owns to the thread or middle of the bayou on which his land borders. In any event —that is, even if either bayou should be held to be a navigable stream—he claims the bayou banks, or land between the ordinary high-water mark and the ordinary low-water mark.

Defendants admit that Dolet bayou is not, and never has been, a navigable stream, and that the state therefore had no right to lease the bed or bottom of that bayou, within the boundary lines of plaintiff's land. Defendants contend that Bayou Pierre was once a navigable stream, and has ceased to be such, and that therefore the state had authority to lease the bed or bottom of that stream, and the banks or land between what was once the ordinary high-water mark and what was once the ordinary low-water mark. Defendants asserted a reconventional demand for damages alleged to have been caused by plaintiff's interference with their alleged right of possession of the land once forming the bed of Bayou Pierre, and a demand for a right of passage over plaintiff's adjacent land to the public road.

There was judgment in favor of plaintiff, recognizing his title to the bed and banks of Dolet bayou within the boundaries of his adjacent land, and recognizing his title to the bank of Bayou Pierre, being the land between the ordinary high-water mark and the ordinary low-water mark, between the upper and lower boundary lines of plaintiff's land. Defendants were therefore forbidden to go upon the lands thus recognized as plaintiff's property. The lease to the defendants was recognized as affecting the bed of Bayou Pierre, being the land covered by the waters of the bayou at its ordinary low stage; and they were decreed to have a right of passage over plaintiff's adjoining land to the public road, reserving to plaintiff the right to sue for such damages as he might suffer by reason of defendants' right of passage. The demands of both the plaintiff and the defendants for damages were otherwise rejected.

Defendants have appealed from the judgment, and plaintiff, answering the appeal, prays that the judgment be amended so as to declare him the owner of the bed of Bayou Pierre to the middle or thread of the stream, and to reject defendants' demand for a right of passage to the public road.

Appellant assigns as error that the district court erred in holding that the bed of Bayou Pierre was the land covered by water at its ordinary low stage, instead of holding that the bed of the bayou was the land between

the banks covered by water at its ordinary high stage, and that the court therefore erred in holding that the well which defendants had commenced drilling was on the land of plaintiff. On the original hearing of the appeal, a majority of the members of the court, taking that view of the case, rejected plaintiff's demand, except as to the bed of Dolet bayou, and ordered the case remanded for trial of the question of location of defendants' right of passage to the public road and the amount of compensation to be paid for the right. A rehearing was granted on the application of plaintiff, appellee.

[1] The evidence sustains the conclusion of the district judge that Bayou Pierre was once a navigable stream, but that for many years it has not been navigable. When the bayou had ceased to be navigable, the state, having been theretofore the owner of the bed of the bayou, subject to the right of the public to navigate the bayou and to use the banks, which belonged to the owners of the adjacent lands, had the right to lease the bed of the bayou. Board of Commissioners v. Glassel, 120 La. 400, 45 South. 370; State v. Bayou Johnson Oyster Co., 130 La. 604, 58 South. 405; Perry v. Board of Commissioners, 132 La. 415, 61 South. 511; State ex rel. Board of Commissioners v. Capdeville, Auditor, 146 La. 94, 83 South. 421.

[2] The bed of a navigable river—that is, the land which the state holds in her sovereign capacity—is only the land that is covered by the water at its ordinary low stage. The land lying between the edge of the water at its ordinary low stage and the line which the edge of the water reaches at its ordinary high stage—that is, the highest stage that it usually reaches at any season of the year—is called the bank of the stream, and belongs to the owner of the adjacent land, subject to the right of the public to use the bank, to land and unload boats, to dry nets, etc. Rev. Civ. Code, arts. 455 and 457; Morgan v. Livingston, 6 Mart. (O. S.) 19; De Ben v. Gerard, 4 La. Ann. 30; Lyons v. Hinckley, 12 La. Ann. 655; Heirs of Leonard v. City of Baton Rouge, 39 La. Ann. 275, 4 South. 241; Heirs of La Branch v. Montegut, 47 La. Ann. 674, 17 South. 247; State v. Richardson, 140 La. 330, 72 South. 984; Howard v. Ingersoll, 13 How. 381, 14 L. Ed. 189; 6 Corpus Juris, 1178.

There is nothing in the opinion in Minor's Heirs v. City of New Orleans, 115 La. 301, 38 South. 999, contrary to articles 455 and 457 of the Code, or the decisions cited above. It is true, it was said, in Minor's Heirs v. City of New Orleans:

"In speaking of a river as a boundary, the stream in its ordinary state of high water is intended."

But that was not intended as a denial that, under article 455 of the Civil Code, the ownership of the banks of navigable streams is vested in the owners of the adjacent lands, as an inherent right. And the banks of a stream are defined in article 457 as "that which contains it in its ordinary state of high water."

The expression in Perry v. Board of Commissioners, 132 La. 415, 61 South. 511, "the state owns the land below high-water mark and that constituting the bed of the stream," must be read and construed with reference to the context. The expression in full was:

"Surveys made under the authority of the United States stop at navigable waters, however, and a title predicated upon such survey, showing the bank of a navigable stream as a boundary, cannot be projected across such stream; the more particularly as, under our law, the state owns the land below high-water mark and that constituting the bed of the stream, subject to the rights of the riparian proprietor with respect to the accretion."

What was meant was that the United States did not grant, as public lands, the area under navigable streams. There was no occasion for deciding, and the court had no

intention of saying, that the banks of navigable streams belonged not to the adjacent landowners, but to the state.

The land on which defendants had commenced or prepared to drill a well, being the bank of Bayou Pierre—that is, the land between the ordinary high-water mark and the ordinary low-water mark—belongs to plaintiff. The judgment appealed from in that respect is correct.

[3] Of course, there is no dispute that the judgment is correct in so far as it recognizes plaintiff's ownership of the bed of Dolet bayou, which, it is admitted, is and always has been nonnavigable. The beds of streams that are not and never were navigable belong to the riparian owners, to the thread or middle of the stream. Amite Gravel & Sand Co. v. Roseland Gravel Co., 148 La. 704, 87 South. 718.

[4] As was said in the original opinion of this court, the question of location of a right of passage claimed by defendants over plaintiff's land, from the bed of Bayou Pierre to the public road, and the question of compensation to be paid therefor, received little or no consideration in the district court. Defendants are not entitled to a right of passage over plaintiff's land unless the parties agree upon its location and upon the compensation to be first paid, or until the location of the servitude and the compensation to be first paid shall have been fixed by a judicial decree. We have concluded that defendants' reconventional demand for a right of passage over plaintiff's land should be dismissed as of nonsuit, reserving to defendants whatever right of action they may have to sue for a right of passage.

The judgment appealed from is annulled in so far as it declared that defendants were entitled to a right of passage over plaintiff's land from the bed of Bayou Pierre to the public road, and defendants' reconventional demand for a right of passage is dismissed as of nonsuit, reserving to defendants whatever right of action they may have to sue for a right of passage over plaintiff's land. In all other respects, the judgment appealed from is affirmed at the cost of defendants, appellants.