566 So.2d 673 (1990)
J.M. EDMISTON, Jr., et al., Plaintiffs-Appellants,
v.
Jimmy WOOD, et al., Defendants-Appellees.
No. 21660-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
Leroy Smith, Jr., Tallulah, for plaintiffs-appellants.
Broussard, Bolton, Halcomb, Vizzier & Van Hoof, Dorwan G. Vizzier, Alexandria, for defendants-appellees.
Before JONES, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Plaintiffs appeal the district court's judgment in favor of defendants in a suit seeking a declaratory judgment that land owned by one defendant and leased by the other defendant is subject to public use when nearby navigable bodies of water overflow their beds and cover defendants' property. We affirm.
The evidence in the case, all of which was submitted by stipulation, shows that the defendant, John W. Hogue, Jr., is the owner of land bordering the Mississippi River and situated next to Yucatan Lake in northeast Louisiana. Defendant Jimmy Wood is Hogue's lessee, and Hogue gave Wood permission to post those lands to prevent trespass thereon. Hogue has specifically forbidden the plaintiffs from trespassing on his land. The land is posted against trespassing in accordance with the appropriate state laws and parish ordinances. The location of the posted boundaries are indicated on topographical maps prepared by the United States Geological Survey which were introduced into evidence as Exhibits B and C of the stipulation of facts.
Except for some fields which were cleared and used for the growing of hay and agricultural crops, the posted lands are covered by bottomland hardwood timber including oak, pecan, hackberry, cottonwood, sycamore, and willow. The posted lands have been used by Hogue and his family for many years for growing commercial timber, for pasture land for cattle, and for leasing the hunting rights.
*674 The area is covered with terrestrial plant life. Though the lands posted are not normally flooded, portions of the land will occasionally flood from backwaters of the Mississippi River when its level is sufficiently high. Water does not stand in these areas long enough to destroy vegetation, nor do these areas flood on local rainfall. The areas flood only from the high water of the Mississippi River and the resultant backwater.
Most of the posted land involved lies between the Mississippi River levee and the Mississippi River. The levee and the river are not in proximity to each other because the river has changed course and is now some distance from the levee. At times, when the Mississippi River is in excess of 16 feet at Vicksburg, the waters of the river cover a portion of this land, and persons can enter over or upon the land by boat from the river or lake without crossing dry land, due to the fact that a portion of the land is submerged under the backwaters or flood waters of the river and/or lake.
When the river stage is at 12 feet at Vicksburg, the waters of the river enter this land from the south through Yucatan Lake, and at 35 feet at Vicksburg, the waters of the river enter the land from the north and south.
Both the Mississippi River and Yucatan Lake are navigable bodies of water.
Seeking to duck hunt on this land when the backwaters of the Mississippi and/or Yucatan Lake flood the area, plaintiffs seek a declaratory judgment holding that this land may not be posted during any period in which the overflow waters of the river and/or the lake cover the land to a depth sufficient to allow navigation thereon.
The district court ruled in favor of the defendants, concluding as a matter of law that plaintiffs were not entitled to navigate their vessel over defendants' flooded property, and rejected their demands. Plaintiffs now bring this appeal.
The sole issue presented for our consideration is whether privately owned land becomes subject to public use when a navigable body of water overflows its normal bed and temporarily covers the adjacent privately owned land.
The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. LSA-C.C. Art. 456; Wemple v. Eastham, 150 La. 247, 90 So. 637, 638 (1922). Nevertheless, when there is a levee in proximity to the water, established according to law, the levee shall form the bank. LSA-C.C. Art. 456.[1] This provision has been applied by Louisiana courts only as to levees located in proximity to the water. Mayer v. Board of Commissioners, 177 La. 1119, 150 So. 295 (1933).
The main thrust of the appellants' argument seems to be that when the river is high enough to flood the instant land to a depth sufficient to allow navigation thereon, the land in question thus becomes part of one or both of the two navigable bodies of water from which the flood water has come. Thus, when they are duck hunting thereon in a boat, they are simply making use of a navigable body of water which is a public thing subject to public use. Accordingly, they take the position that the fact that the land lying under the water is privately owned does not affect the question of navigability, citing D'Albora v. Garcia, 144 So.2d 911 (La.App. 4th Cir.1962).
In D'Albora, the navigable waterway in question was a canal lying along side a highway which had been originally formed as a borrow pit by the state of Louisiana. This canal extended inland from the shore of Lake Pontchartrain.
The defendant in D'Albora owned the property where the canal entered the lake *675 and sought to prevent the passage of any individual unless he was paid a toll for the right to use the canal into the lake. Both the district and appellate courts ruled that defendant could not prevent the use of this navigable body of water, despite that the bed and bottom of it were privately owned. Thus because the canal was navigable, even though the defendant may have owned the bottom or bed, the navigability of the canal precluded his obstruction of it.
We find D'Albora to be distinguishable. In the instant case, contrary to D'Albora, the property over which the plaintiffs seek to navigate does not constitute the bed or bottom of a navigable body of water. Further, in D'Albora, the question regarding whether plaintiffs would have been entitled to navigate their vessels over defendant's property had the body of water overflowed its bed and bottom was not present.
The stipulation of facts contained in the instant record clearly demonstrates that the land area in question does not constitute the "bank" of either the Mississippi River or Yucatan Lake. All parties agreed that the posted lands are not normally flooded, though "portions of the land will occasionally flood from backwaters of the Mississippi River when the level of the Mississippi River is sufficiently high." Additionally, "water does not stand in these areas sufficiently long to destroy vegetation nor do these areas flood on local rainfall. The areas flood only from the high water on the Mississippi River and the resultant backwater."
Under the facts presented here, it is apparent that the land in question is situated above the "ordinary high stage of water." Accordingly, the land area in question does not constitute the bank of either body of water and is therefore not subject to public use in accordance with LSA-C.C. Art. 456.
The facts of the instant case are quite similar to Warner v. Clarke, 232 So.2d 99 (La.App. 2d Cir.1970), writ refused, 255 La. 918, 233 So.2d 565 (1970). At issue was the wording of the then LSA-C.C. Art. 455, the predecessor of the current LSA-C.C. Art. 456 at issue in the instant case.[2] Relying on the trespass statute, LSA-R.S. 14:63, the court concluded that whatever legislative intent originally surrounded 455, the trespass article "made it apparent that the legislature did not intend to maintain a right ... in the general public to hunt and fish upon the levees and the land that lies between the levees and the Mississippi River." Warner, supra, at 102.
Apparently this statement was influenced by the provision in LSA-R.S. 14:63 A(2) that stated that an entry from a waterway for "emergency purposes" was not a trespass. Of course, the consistently complicated trespass statute has since been amended to remove the aforementioned reference to entry from a waterway for emergency purposes. Instead LSA-R.S. 14:63 C(6) allows a person to enter upon immovable property of another "due to an emergency" without reference to entry from a waterway.
However, as we have previously noted, the former LSA-C.C. 455 has also been changed and is now LSA-C.C. Art. 456. Comment (b) to LSA-C.C. Art. 456 notes that the illustrations of public use contained in the former Art. 455 have been eliminated and points out that "the servitude of public use under this provision is not `for the use of the public at large for all purposes' but merely for purposes that are `incidental' to the navigable character of the stream and its enjoyment as an avenue of commerce."
Thus, while the trespass statute which formed the basis of the Warner court's conclusion has been amended to arguably remove the clause upon which Warner was based, the Civil Code article at issue in Warner has also been changed. A revision comment to the new article is adverse to the position asserted by the instant plaintiffs. We thus have no difficulty determining that hunting and fishing the adjacent *676 overflow lands at issue in the instant case is not for a purpose that is "incidental to the navigable character of the stream and its enjoyment as an avenue of commerce."
In summary, plaintiffs' jurisprudence is distinguishable. The facts of the case are very similar to a case decided adversely to plaintiffs' position by this court. Concededly, the statute upon which that opinion was based has been amended arguably in plaintiffs' favor. However, the Civil Code article defining the banks of a stream has also been amended and the comment thereto is adverse to the plaintiffs. In short, there is no jurisprudential or codal support for plaintiffs' position.
We therefore conclude that the district court was correct in ruling that defendants are entitled to post their property against trespassers and to prevent individuals from navigating their vessels over that property when neighboring navigable bodies of water overflow their natural bed and bottoms and cover defendants' land. Accordingly, the judgment of the district court is hereby affirmed, with all costs of this appeal to be paid by plaintiffs.
AFFIRMED.
NOTES
[1] LSA-C.C. 456 reads as follows:

The banks of navigable rivers or streams are private things that are subject to public use.
The bank of a navigable river or stream is the land lying between the ordinary low and the ordinary high stage of the water. Nevertheless, when there is a levee in proximity to the water, established according to law, the levee shall form the bank.
[2] Article 455 read as follows: "The use of the banks of navigable rivers or streams is public; accordingly, everyone has a right freely to bring his vessels to land there, to make fast the same to the trees which are there planted, to unload his vessels, to deposit his goods, to dry his nets, and the like."