CARAWAY, J.
|,The State of Louisiana (“State”) appeals a ruling denying its right to intervene into these consolidated actions for declaratory judgment regarding the mineral ownership of a large tract of land. The State claims that a navigable waterway which it owns divides the tract into two parts. If established, this fact concerning the State’s waterway would directly bear upon the underlying dispute over the maintenance of a mineral servitude over the large tract which is subject to the claim of prescription of nonuse. From our review of the pleadings and the positions of all sides, we find that the State’s joinder is required for a complete adjudication of the controversy and the State’s intervention should be allowed.

Facts and Procedural History

The procedural issue before the court arises from consolidated suits filed in 2009 concerning the validity of a 1967 mineral servitude burdening a 1,154-acre tract known as “Sunrise Place Plantation” in DeSoto Parish. The owners of the disputed mineral servitude are the Succession of Eugene Copeland, Karen Ann Ochsenbein Lanier, Annie Laurie Lanier Samuels, Harvey H. Samuels Jr., and Briarwood Finance Co., LLC, and their mineral lessees are Furie Oil & Gas, LLC, Silver Spur Royalty Co., LLC, and Jamma Energy, LLC (hereinafter the “Mineral Servitude Group”). The surface owners of the property are Cloyce C. Clark Jr. and Martha Chamberlain Clark, and their mineral lessees are SWEPI LP and Encana Oil and Gas, Inc. (hereinafter the “Landowners Group”). Originally, both sides sought declaratory judgments as to the validity of the disputed mineral 12servitude. The competing oil and gas leases were executed in 2008 and 2009. The underlying dispute concerned prescription of nonuse and whether the servitude is still in effect. At issue was whether a well that had produced minimal quantities had sufficiently interrupted prescription.
The Mineral Servitude Group alleged that their rights were maintained by continuous production from the servitude from its creation in 1967 until July 9,1998. They further alleged that a well was commenced on the property on June 80, 2008, and prescription of nonuse was again interrupted. That well is currently shut in.
By 2012, as the original parties approached trial, the Landowners Group revealed in a discovery disclosure that they would assert that Dolet Bayou, which crossed the 1,154-aere tract, was a navigable waterway. This new issue raised the possibility of ownership[1] of the State of a part of the 1,154-acre tract (the “waterway”), and such ownership, if established, would divide the tract into two noncontiguous tracts of land. The Mineral Code requires that the creation of a single mineral servitude extend over a continuous body of land and a grant of rights over noncontiguous tracts creates multiple ser- *258 vitudes. La. R.S. 31:63 and 64. Thus, by-raising the Dolet Bayou matter, the Landowners Group sought to compound the burden of the Mineral Servitude Group to show that the interruption of prescription had occurred on two mineral servitudes created by the 1967 mineral reservation.
|aThe Mineral Servitude Group responded to the Dolet Bayou matter by filing a motion in limine to prohibit such evidence and with an exception of res judicata. The res judicata defense rests upon two rulings of the Louisiana Supreme Court, Wemple v. Eastham, 150 La. 247, 90 So. 637 (1922) (“Wemple No. 1 ”), and Wemple v. Albritton, 154 La. 359, 97 So. 489 (1923) (“Wemple No. 2”), involving the predecessor-in-title to all of the parties in the consolidated actions, B.Y. Wemple. Wemple had successfully defended his ownership of the land in those suits against party defendants who claimed rights granted by the State pertaining to Dolet Bayou. The Mineral Servitude Group, therefore, argued that as successor to Wemple’s ownership of the 1,154-acre tract, the Landowners Group was precluded from asserting a position contrary to the Wemple rulings.
The motion in limine and an exception of res judicata were heard on December 5, 2012. Although there was no judgment, the trial court gave oral reasons indicating that the issue of Bayou Dolet’s navigability was res judicata as between the original parties, but that the court’s ruling was subject to withdrawal at any time and also subject to the Landowners Group’s motion for reconsideration.
On the heels of this action, the State moved to intervene in the suit, and its petition for intervention was granted on December 14, 2012. On January 8, 2013, the Landowners Group filed a motion for reconsideration of the court’s oral ruling on the peremptory exception of res judica-ta regarding the navigability of Bayou Do-let. Thereafter, on January 23, 2013, the Mineral Servitude Group filed several exceptions to the State’s petition 14for intervention, including peremptory exceptions of no cause of action and no right of action.
The trial court held a hearing on April 4, 2013, to consider the Mineral Servitude Group’s exceptions of no right of action, no cause of action, and res judicata. On July 24, 2013, the court withdrew its prior oral ruling on the issue of res judicata regarding the navigability of Bayou Dolet, and denied that exception. Further, the trial court ruled that the Mineral Servitude Group’s “Peremptory Exception of No Right of Action to State of Louisiana’s Petition for Intervention be and is hereby deferred to trial on the merits on the state of Louisiana’s claim of ownership of Bayou Dolet.” However, on June 9, 2014, the trial court reversed its course again and issued a judgment against the State on the exception of no right of action, finding the Mineral Servitude Group’s exception to be “well-founded for the reasons stated” in their brief. The trial court held that the State had no interest in the pending declaratory judgment action involving the mineral dispute between the parties. The State of Louisiana appeals the dismissal of its interventional claims.

Discussion

The Mineral Servitude Group primarily asserts that their declaratory judgment action fixed as the sole object of the suit the issue of whether their mineral servitude created in 1967 lapsed by the prescription of nonuse. In filing their petition in the consolidated actions, the Mineral Servitude Group necessarily admits that the Landowners Group is the owner of the 1,154-acre tract of land. Therefore, expressed from the Landowners Group’s |r,opposing perspective, the object of the suit is whether the Landowners Group owns the complete and unencumbered rights in the land, *259 including the landowner’s right to the minerals. The issue of the ownership to the production of oil and gas is also incidental to these claims for declaratory judgment, requiring the inclusion in the action of the various mineral lessees.
From this overview of the action, whether burdened by the 1967 mineral servitude or not, the Landowners Group’s ownership of the land was never in question in this declaratory judgment action before the State’s arrival in the case. The State’s claim in intervention, however, challenges the Landowners Group’s ownership of a part of the 1,154-acre tract (the “waterway”) and any mineral rights of the Mineral Servitude Group encumbering the waterway. The Mineral Servitude Group therefore argues that the State has injected into this declaratory judgment action a wholly unrelated issue, justifying the trial court’s peremptory ruling.
Secondarily, the Mineral Servitude Group argues, and the trial court’s ruling recognized, that the State’s claim of ownership for the waterway is based upon the navigability of Bayou Dolet, which has been rejected in the two prior Wemple cases of the Louisiana Supreme Court. The trial court cites the Wemple rulings as settled law and indicates that the State “has no interest in the dispute” to assert navigability, or, at the least, an overruling of the Wemple rulings and a new ruling recognizing navigability could have only prospective effects.
IfiWe find the Mineral Servitude Group’s arguments and the trial court’s ruling to properly address issues requiring peremptory consideration. Nevertheless, we find that the grant of the peremptory exception of no right of action is mislabeled. Clearly, the State has a cause of action and is the proper party to assert that land in this state is (or was) navigable and that it holds ownership of the public property in its sovereign capacity. La. C.C. art. 450. Yet, the improper joinder of the State into this pending declaratory judgment suit may be appropriately questioned at the outset upon the party’s attempt to intervene. La. C.C.P. arts. 1091 and 641; Palace Properties, LLC v. City of Hammond, 02-1263 (La.App. 1st Cir.6/27/03), 859 So.2d 15. Likewise, the issue of the pre-clusive effect of a prior judgment is the basis of the peremptory exception of res judicata which may be noticed by the trial or appellate court for the dismissal of the State’s claim. La. C.C.P. art. 927. We also note that the trial court’s ruling, which was made after some evidence was received, did not rest upon any factual determination of the issue of navigability in this case. Accordingly, we will review de novo the trial court’s dismissal of the State’s intervention and address the two procedural issues argued by the Mineral Servitude Group.

The Propriety of the State’s Intervention and Joinder in the Declaratory Judgment Action

The procedural authority for a third person to intervene in a pending action is set forth in La. C.C.P. art. 1091, as follows:
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
|7(2) Uniting with defendant in resisting the plaintiffs demand; or (3) Opposing both plaintiff and defendant.
In addition to these parameters for intervention, the jurisprudence has recognized that the procedural test for joinder *260 of parties for the complete adjudication of the dispute is also relevant when a third party’s right to intervene is questioned. Palace Properties, supra. Article 641 provides for joinder as follows:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
La. C.C.P. art. 641.
The dispute in Palace Properties concerned a declaratory judgment action where, as in this case, the ownership and encumbrance of immovable property was the subject matter of the action. The predecessor-in-title to the intervenor had granted the city a street servitude across the disputed tract. Years later, after the city attempted to abandon use of the street, the plaintiff brought suit to declare the abandonment of the street a nullity, against the public .interest for use of the street and the plaintiff’s rights as an interested nearby landowner. The trial court denied the intervenor the right to intervene. Reversing that ruling, the court of appeal recognized that at stake in the litigation was whether or not the intervenor’s land remained | ^encumbered by the public servitude. The intervention was therefore entirely proper. The court also noted that intervenor’s right to participate would also result because of the joinder test of Article 641. Such conclusion was a peremptory ground for requiring the landowner of the disputed tract to be included in the action. See, La. C.C.P. arts. 645 and 927(4).
In this case, the State has an interest to enforce a right related to the object or subject matter of the pending action, when that subject matter is seen as the ownership of land and various mineral right encumbrances of that land. While the entire tract of land is 1,154 acres, the State’s claim to only a small strip does not disconnect its rights from the controversy. Likewise, Article 1091 expressly allows the State to oppose the Mineral Servitude Group’s claim for a mineral servitude and any title interest of the Landowners Group over the alleged waterway. Opposition by an intervenor can be against all parties in the action.
We reject as too narrow the Mineral Servitude Group’s view that the pending declaratory judgment action is limited to only the question of the continued existence of the 1967 mineral servitude. In the first place, the present landowner parties are not barred from questioning whether the 1967 sale of the 1,154 acres of land to their predecessor-in-title did in fact convey the ownership of the waterway. The issue of the State’s ownership had never been adjudicated against the State as will be discussed below. Therefore, the Landowners Group’s assertions that the State’s ownership of the waterway divides the 1,154-acre tract was a relevant claim, possibly requiring the measure of the continued existence of two mineral servitudes. J^That claim had been raised in the suit at the time of the State’s intervention. Moreover, the presence of the mineral lessees as parties in the suit and any ongoing production mean that the resolution of the question of the continued existence of the Mineral Servitude Group’s mineral servitude rights would be expected to result in *261 a proper division of the production proceeds and royalties for the 1,154 acres upon conclusion of the action. Such resolution for the payment of ongoing production would not result if the State’s claim for ownership to part of the 1,154 acres must be litigated in another action.
In summary, the State in brief correctly observes that “[a] decision in favor of any party to this litigation in the absence of the State will result in an allocation of State-claimed rights to private parties.” When the State sought intervention, the ownership of land and all attendant and extant mineral rights to that land were the subject matter of this declaratory judgment. The State may oppose all parties claiming such ownership by intervening to claim a portion of the disputed land as a navigable waterway.

Res Judicata

The two Wemple opinions of the Louisiana Supreme Court were recognized by the trial court as precluding the State’s rights to assert the navigability of the waterway and to therefore claim ownership. Wemple is the predecessor-in-title to both the Mineral Servitude Group and the Landowners Group, and Wemple prevailed in the two prior suits involving ownership of portions of the bed of Dolet Bayou.
|10In Wemple No. 1, the defendant had acquired an oil and gas lease from the State over “the meandering line” of Dolet Bayou running through four sections of Wemple lands. The mineral lessee stipulated “that Dolet Bayou is not, and never has been, a navigable stream, and that the state therefore had no right to lease the bed and bottom of that bayou.” Wemple No. 1 at 637. With that stipulation, the court affirmed the trial court’s recognition of Wemple’s ownership of land traversed by the bayou.
Wemple No. 2 involved only a 29-acre tract in one section of land “lying within the original bed of Red or Dolet Bayou.” The defendant unsuccessfully claimed ownership by virtue of a 1917 patent from the State. The ruling noted the lack of proof by the defendant concerning the navigability of the waterway in 1812.[2] Likewise, acquisition of the land by the State through the 1849 swamp land grant from the United States was not established. Finally, with adequate proof of over 30 years of possession by Wemple and his predecessors-in-title, the court held that the State’s issuance of the patent to defendant was improper under state law, even assuming the State had acquired ownership from the federal government.
The first and most significant observation about these Wemple rulings is that the State was not a party to either action. Particularly, in Wemple No. 1, which contested ownership of a long stretch of Dolet Bayou running through the 1,154 acres, the defendant’s mineral lease was challenged merely as a slander of title disturbing Wemple’s claim of possession and In ownership. The ruling was not a judgment on a petitory action against the State. Wemple No. 2 addresses only a small stretch of Dolet Bayou and therefore is not a ruling affecting the entirety of the waterway which the State now claims. In Wemple No. 2, the contested patent did purport to divest the State of ownership of *262 the land. Yet, with the State’s present claim resting on navigability of the Dolet Bayou, a state patent of a navigable waterway is a nullity under the ruling of Gulf Oil Corp., supra, note 2.
Louisiana’s enactment in 1990 of La. R.S. 13:4231, et seq., regarding res judicata retained the essential principle that “a final judgment is conclusive between the same parties.” See also, La. C.C. art. 2286. In both the common law and the civil law, in order for a second suit to be barred by the doctrine of res judica-ta, the parties must appear in the same capacities in both suits. Burguieres v. Pollingue, 02-1385 (La.2/25/03), 843 So.2d 1049, 1054. There exists an identity of parties whenever the same parties, their successors, or others appear so long as they share the same “quality” as parties. Welch v. Crown Zellerbach Corp., 359 So.2d 154, 156 (La.1978), citing Quinette v. Delhommer, 247 La. 1121, 176 So.2d 399 (1965); 2 Planiol, Traité Elementaire de Droit Civil, No. 54A(4) at 35-36 (11th ed. La. State L.Inst.trans.1959). With respect to application of the principle of res judica-ta, the term privy refers to and encompasses representatives and successors, including any person having a legal right or interest in the subject matter of the prior suit derived through succession or assignment from the litigant who asserted the right; or any person whose legal right or interest in the subject matter of the prior suit was asserted by his legal | ^representative. Coates Equipment & Service, Inc. v. Glover, 181 So.2d 455, 459 (La.App. 1st Cir.1965); see also Gilbert v. Visone, 30,204 (La.App.2d Cir.2/25/98), 708 So.2d 496.
In an early ruling of the Louisiana Supreme Court, the following observation was made regarding the res judicata element for the identity of the parties:
Again, where two persons litigate titles set up by them, respectively, to particular property, and it is decreed to belong to one of them, though in fact it belongs to a third person not a party to the suit, such third person may thereafter, either sue for the property himself, or may transfer his right to the party cast in the litigation or to another, who may then exercise it, and renew the litigation for the vindication of the title thus acquired. In other words, a litigation is not conclusive as against those who are not parties to it, nor as to rights not possessed by the litigants at the time, save as to persons who are the privies of each other.
Gajan v. Patout & Burguieres, 135 La. 156, 65 So. 17 (1914).
The State is not a successor by grant from either of the defendants in the Wem-ple rulings. Those defendants were not the legal representatives of the State in the prior Wemple suits. Therefore, the identity of the parties test for res judicata is not met, and res judicata does not apply to bar the State’s intervention in this proceeding.

Conclusion

For the foregoing reasons, the trial court’s grant of the peremptory exception dismissing the State from proceeding is reversed. Costs of appeal are assessed to the Mineral Servitude Group.
REVERSED AND REMANDED.

. Louisiana Civil Code Article 450 defines public things owned by the state to include navigable water bodies.

. In Gulf Oil Corp. v. State Mineral Bd., 317 So.2d 576 at 589 (La.1975), the court observed that all states were placed on an equal footing with the original thirteen states concerning ownership of navigable waterbot-toms: "Because of the equal footing doctrine, states subsequently admitted to the Union likewise acquired beds of navigable waters.” Thus, the key test for navigability and the State’s corresponding ownership is 1812 at the time of our statehood.