| TERENCE COOPER & | * | NO. 2022-CA-0748 |
|---|---|---|
| VANESSA COOPER | | |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| ENGLISH TURN PROPERTY | | FOURTH CIRCUIT |
| OWNERS ASSOCIATION, INC. | * | |
| | | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-09712, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Paula A. Brown, Judge Dale N. Atkins)

Kyle Salvador Sclafani
Ryan Michael Scafidel
THE LAW OFFICE OF KYLE S. SCLAFANI
4130 Canal Street, Suite A
New Orleans, LA 70119

Jack Edward Morris
JACK E. MORRIS, ATTORNEY AT LAW, LLC
4051 Veterans Memorial Boulevard
Suite 208
Metairie, LA 70002

        COUNSEL FOR PLAINTIFFS/APPELLANTS

Kim M. Boyle
Allen C. Miller, Sr.
James H. Gilbert
PHELPS DUNBAR LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

        COUNSEL FOR DEFENDANT/APPELLEE

**AFFIRMED**
**April 25, 2023**

This matter involves a dispute between Terrence and Vanessa Cooper ("the Coopers"), purchasers of property ("Lot 86") within the English Turn Subdivision ("the Subdivision"), and the English Turn Property Owners Association ("ETPOA"). The dispute centers on whether the Coopers have a right of passage to access their property without being subject to the fees assessed on the Subdivision's property owners under the terms of the Subdivision's Declarations of Covenants, Conditions, and Restrictions ("DCCR").

The Coopers retained contractors to begin construction work on a house for Lot 86. The ETPOA, which privately maintains and owns the Subdivision's Common Areas, denied the contractors' entry to the Subdivision and issued a stop work order pending the Coopers' ratification of the DCCR. The Coopers refused to sign the DCCR. Both parties filed summary judgment motions regarding the Coopers' right of passage.

On appeal, the Coopers maintain that the trial court erred in denying their motion for partial summary judgment seeking declaratory judgment and mandatory

1

injunction demanding access to Lot 86 without subjecting their property to the DCCR payments terms.  Conversely, they contend that the trial court also erred in granting the ETPOA's motion for summary judgment which denied the Coopers' request for unrestricted access to the Subdivision without paying the DCCR assessments and dismissed the Coopers' claims with prejudice.[1]

We find no material issues of fact or law exist that entitle the Coopers to an unrestricted right of passage to their property without submitting to the DCCR assessment fees.  Accordingly, we affirm the trial court's judgment granting the ETPOA's motion for summary judgment and denying the Coopers' motion for partial summary judgment.

## FACTUAL AND PROCEDURAL HISTORY

The English Turn Joint Venture LLC, which later changed its name to English Turn Limited Partnership ("the Partnership"), created the Subdivision through the filing of the DCCR on May 6, 1988.    At the time the DCCR was recorded, the Partnership had retained the right to subject additional properties to the terms of the DCCR at its discretion.  The Partnership also held certain easements to access the properties across the Subdivision's Common Areas.

The Partnership sold some of the remaining lots within the Subdivision to English Turn Lots, L.L.C. ("English Turn Lots") in 2013.  Some of the lots obtained by English Turn Lots were not subject to the DCCR and its amendments.  As part of the sale, English Turn Lots acquired from the Partnership "[a]ll rights

---

[1] The ETPOA had permitted the Coopers to access Lot 86; however, denied access to the Coopers' guests and invitees.

and obligations of the Sellers as the 'Declarant' and as an 'Owner' under that certain Declaration of Covenants, Conditions, and Restrictions for English Turn Subdivision dated May 6, 1988 . . . as amended." These rights included the acquisition of certain easements afforded by the DCCR in Section 3.11, which provided, in part, the following:

> There is hereby reserved in Declarant, and its successors, assigns, and successors-in-title to the Additional Property (if said rights are granted by Declarant to such successors, assigns, and successors-in-title), for the benefit of and as an appurtenance to the Additional Property and as a burden upon the Property, perpetual, non-exclusive rights and easements for (i) pedestrian and vehicular ingress, egress, and parking, across, within, and on all roads, sidewalks, trails and parking facilities, from time to time located within the Common Areas . . . .

The Subdivision's Common Areas, as defined in the DCCR, include privately maintained community parks, recreational facilities, and streets. Access to all lots within the Subdivision—through manned security guard gates— requires traversal of the Common Areas. The ETPOA funds the amenities for the Common Areas through fees assessed by the DCCR on the Subdivision's property owners.

The Coopers purchased Lot 86 from English Turn Lots via Act of Cash sale on March 8, 2021. The transaction did not grant the Coopers English Turn Lot's easement rights, such as the right to traverse the Common Areas, as outlined in Section 3.11 of the DCCR. At the time of the sale, Lot 86 was one of the properties not subject to the terms of the DCCR.

In October 2021, the Coopers retained contractors to begin improvements on Lot 86 to build a house. After the ETPOA learned of these improvements, the

3

ETPOA prevented the Coopers' contractors from entering the Subdivision. The ETPOA issued a "Stop Work Order" which stated, in pertinent part, that "Property is not annexed into the community. Owner must sign annexation paperwork and return to the POA office." The "annexation paperwork" included the Coopers' ratification of the DCCR. The Coopers declined to ratify the DCCR.

The Coopers filed a Petition for Declaratory Judgment, Mandatory Injunction and Damages ("the Petition") against the ETPOA. The Petition sought a declaratory judgment finding that Lot 86 was not subject to the DCCR and a mandatory injunction for the ETPOA to cease and desist from interfering with the Coopers' access to their property and disturbing the Coopers' peaceful possession. The Petition also sought damages caused by the ETPOA's alleged bad faith disturbance of the Coopers' peaceful possession and their right to access Lot 86.

The ETPOA's answer and affirmative defenses to the Coopers' Petition argued, in part, that the Coopers had no right to traverse the Common Areas and claim the benefits of the Subdivision without paying the dues and assessments provided for in the DCCR.

Thereafter, the Coopers filed a motion for partial summary judgment reiterating its request for a declaratory judgment that Lot 86 was not subject to the DCCR and a mandatory injunction ordering the ETPOA to cease and desist from interfering with the peaceful possession of their property. In response, the ETPOA filed its counter motion for summary judgment. The ETPOA asserted that no provision of the DCCR or the Coopers' Act of Sale granted the Coopers an

unconditional right to traverse the Subdivision and that the Coopers had no claim for damages because their property rights had not been disturbed. The ETPOA also acknowledged that Lot 86 had not been annexed to the Subdivision pursuant to the terms of the DCCR at the time of the Coopers' purchase. Consequently, the ETPOA urged that its acknowledgment meant that no justiciable controversy existed to entitle the Coopers to declaratory judgment on that issue.

Evidence admitted at the hearing on the parties' respective summary judgment motions included the affidavit of Sandra Benenate, the Director of Operations for the ETPOA, the DCCR, and the Coopers' Act of Cash Sale. The ETPOA re-urged its concession that Lot 86 was not subject to the DCCR. During argument, the trial court agreed with the ETPOA's underlying premise that it was entitled to assess a fee, via the DCCR, for the Coopers' right to traverse the Common Areas in order to gain access to Lot 86. The following exchanges took place between the trial court and counsel for the Coopers:

THE COURT:
Let me ask you this, Mr. Scalfani. It's my understanding that, according to the cases, that an enclosed property has to be allowed access; however, that access is not free.

MR: SCALFANI:

I would agree, Your Honor.

. . . .

MR. SCALFANI:

Insofar as English Turn Lots, as the predecessor in title created this enclosed estate. And we talked about that in our opposition. And that it is the -- as the successor in title, the Coopers are entitled to have access.

THE COURT:

But the access is not free.

MR. SCALFANI:

It's a servitude of some sort, yes.

THE COURT:

And it comes as a result of this declaration. That's [the] way you pay for it, with the fees.

MR. SCALFANI:

I think that's what English Turn would argue, Your Honor. I don't know that - -

THE COURT:

I kind of agree with them.

At the conclusion of the hearing, the trial court rendered judgment granting the motion for summary judgment of the ETPOA and denying the Coopers' motion for partial summary judgment, dismissing all of the Coopers' claims with prejudice. The Coopers timely filed the present appeal.

## SUMMARY JUDGMENT/STANDARD OF REVIEW

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966 (A)(2). "The procedure is favored and shall be construed to accomplish these ends." *Id.* "[The] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to summary judgment as a matter of law." La. C.C.P. art. 966(A)(3). The mover bears the burden of proof. La. C.C.P. art. 966(D)(1). Nevertheless, if the mover will not bear the burden of proof at trial

6

on the issue that is before the court, the mover is not required to negate all essential elements of the adverse party's claim, but rather point out to the court the absence of one or more essential elements to the non-mover's claim. *See* La. C.C.P. art. 966(D)(1).

Appellate courts review summary judgments under the *de novo* standard of review, utilizing the same criteria employed by the trial court in determining whether summary judgment is appropriate. *See Succession of Rasch v. Dabezies*, 2017-0331, p. 5 (La. App. 4 Cir. 10/18/17), 316 So.3d 1167, 1170. When the facts are not in dispute, summary judgment is appropriate as the appellate court need only "look solely to the legal question presented by the motion for summary judgment." *Power Mktg. Direct, Inc. v. Foster*, 2005-2023, p. 9 (La. 9/6/06), 938 So.2d 662, 669. Accordingly, this Court shall review whether there are any genuine issues of material fact in dispute; and if not, whether the ETPOA was entitled to summary judgment as a matter of law and/or alternatively, whether the Coopers were properly precluded from summary judgment relief.

## ASSIGNMENTS OF ERROR

The Coopers raise two assignments of error. In their first assigned error, they maintain that the trial court improperly denied their motion for partial summary judgment in that (i) no genuine issue of material fact exists that Lot 86 was not subject to the DCCR so as to restrict the Coopers' use, and as such, the Coopers are entitled to a declaratory judgment on that fact; and (ii) the Coopers are entitled to summary judgment as a matter of law because there are no genuine issues of material fact regarding the Coopers' right of possession to Lot 86, their right to access the Common Areas of the Subdivision, and their entitlement to a permanent injunction to enjoin the ETPOA from interfering with their right to

possession and access.  The Coopers' second assigned error contends that the trial court erred in granting the ETPOA's motion for summary judgment and dismissing the Coopers' Petition.

The question as to whether the trial court properly granted the ETPOA's motion for summary judgment may be dispositive as to whether the trial court properly denied the Coopers' motion for summary judgment.  Accordingly, this Court shall first review this alleged error.

## DISCUSSION

### *The ETPOA'S Motion for Summary Judgment*

The ETPOA alleged in its summary judgment motion that the Coopers were not entitled to unlimited use of the privately owned amenities of the Subdivision, including the right to traverse the Common Areas of the Subdivision, without paying the fees for use as outlined in the DCCR.  ETPOA emphasized that the Coopers could point to no provision of law or any contractual terms within their Act of Sale or the DCCR which would entitle them to such unlimited use.  Based on our *de novo* review, we agree with the ETPOA's argument.

### *Legal Right to Traverse*

In opposition to the ETPOA's summary judgment motion, the Coopers posit that they obtained a legal servitude to traverse as English Turn Lots' successors in interest by virtue of a servitude by "destination of the owner" and/or alternatively, a gratuitous servitude of passage English Turn Lots acquired from its property sale with the Partnership. The Coopers assert that these servitudes ran with the land, and as a result, the Coopers were the beneficiaries of these servitudes when they purchased Lot 86 from English Turn Lots.  We find no merit to either of these contentions.  Moreover, we find the actual Act of Sale between the Coopers and

English Turn Lots conferred no right of passage servitude to benefit the Coopers without compensation.

Servitude by Destination

The Coopers argue that the sale between the Partnership and English Turn Lot created a servitude of passage by "destination of the owner" as defined by La. C.C. art. 741, where an apparent servitude comes into existence as a matter of right when the estates no longer belong to the same owner. La. C.C. art. 741 specifically states the following:

> Destination of the owner is a relationship established between two estates owned by the same owner that would be a predial servitude if the estates belonged to different owners.

> When the two estates cease to belong to the same owner, unless there is express provision to the contrary, an apparent servitude comes into existence of right and a nonapparent servitude comes into existence if the owner has previously filed for registry in the conveyance records of the parish in which the immovable is located a formal declaration establishing the destination.

According to the Coopers, this servitude by destination of the owner was allegedly created when the Partnership sold additional properties to English Turn Lots, and they succeeded to the servitude upon English Turn Lots' sale of Lot 86 to the Coopers.

Our review of the undisputed facts of this case do not support that the aforementioned sales created a servitude by destination of the owner. Rather, the facts show that at the time of the Partnership's sale to English Turn Lots, the ETPOA owned the Common Areas over which the Coopers now attempt to gain access and that Lot 86 was owned by the Partnership. Moreover, the undisputed facts demonstrate that Lot 86 and the other additional properties sold by the Partnership to English Turn Lots were within the confines of the Subdivision and

9

passage required traversal through the Common Areas. Additionally, as previously referenced and more fully discussed herein below, the Partnership and English Turn Lots entered into a written contract which provided English Turn Lots with certain easement rights. Hence, because the relationship between the properties owned by the Partnership to those properties acquired by English Turn Lots engendered a contractual rather than an apparent servitude, and the Common Areas and Lot 86 did not have the same owner, the principles regarding the creation of a servitude by destination of the owner do not apply to the present matter. *See Davis v. Provost*, 2007-1519, p. 6 (La. App. 3 Cir. 4/2/08), 980 So.2d 821, 826 (where the appellate court determined the neighbor did not acquire an apparent servitude over landowners' property by destination of the owner where the landowners never owned the neighbor's property).

Gratuitous Servitude

Next, the Coopers claim that a gratuitous servitude of passage acquired by English Turn Lots inured to their benefit under La. C.C. art. 694. La. C.C. art. 694 provides the following:

> When in the case of partition, or a voluntary alienation of an estate or of a part thereof, property alienated or partitioned becomes enclosed, passage shall be furnished gratuitously by the owner of the land on which the passage was previously exercised, even if it is not the shortest route to the public road or utility, and even if the act of alienation or partition does not mention a servitude of passage.

The Coopers allege that English Turn Lots obtained a gratuitous servitude of passage from the Partnership after Lot 86 became enclosed as a result of the Partnership's property saTle to English Turn Lots. We disagree. Lot 86 was clearly within the bounds of the Subdivision and access to the Subdivision required passage through one of the manned guard gates separating the Common Areas of

the Subdivision from the public roads at the time of sale between English Turn Lots and the Partnership. Notwithstanding, the properties acquired by English Turn Lots, including Lot 86, did not become "enclosed" as a result of the sale because the contract expressly provided English Turn Lots with easements granting a right of passage to traverse the Common Areas. Therefore, as English Turn Lots' right of passage resulted from a contract, rather than a gratuitous servitude, the Coopers are not entitled to a gratuitous right of passage pursuant to La. C.C. art. 694 based on their acquisition of Lot 86 from English Turn Lots.

<u>Contract Between the Coopers and English Turn Lots</u>

We also find that the express Act of Sale contract between the Coopers and English Turn Lots did not create any servitude of passage on behalf of the Coopers. Again, as noted by the ETPOA, the contract between the Partnership and English Turn Lots which provided English Turn Lots with easements to access the Subdivision permitted reservation of these easements to English Turn Lots' successors only "if said rights are granted by [English Turn Lots] to such successors, assigns, and successors-in-title." "The words of a contract must be given their generally prevailing meaning." *See* La. C.C. art. 2047. Clear and unambiguous language in a contract should be enforced as written. *See Marshall v. Air Liquide-Big Three, Inc.*, 2011-0990, p. 53 (La. App. 4 Cir. 9/7/12), 107 So.3d 13, 47. "A right of passage, or right-of-way, is a servitude, and when it is a result of a contract, its extent and mode of use is regulated by that contract." *See White v. Durrwachter*, 431 So. 2d 65, 67 (La. App. 1st Cir. 1983). Thus, pursuant to the unambiguous language in the contract between English Turn Lots and the Partnership, in order for the Coopers to obtain the rights to the easements, English Turn Lots had to specifically grant the easement rights to the Coopers. Here, the

11

Coopers admit that English Turn Lots did not transfer the rights to these easements to the Coopers in the Act of Sale between the two. Additionally, the record is devoid of evidence that the Coopers attempted to negotiate for these rights as a part of the terms of the purchase in the Act of Sale. Accordingly, we find that the property sale between English Turn Lots and the Coopers conferred no easement rights for the Coopers to traverse the Subdivision.

<u>La. C.C. art. 689; Compensation for Right to Passage</u>

The ETPOA and the Coopers acknowledge that Lot 86 was not subject to the DCCR when it was purchased by English Turn Lots. The Coopers maintain this acknowledgment means that the ETPOA cannot compel the Coopers to ratify the DCCR, whereas the ETPOA argues that in the event the Coopers desire a servitude of passage, the ETPOA can require the Coopers to ratify the DCCR. Again, we agree with the ETPOA's argument.

Lot 86 has become effectively enclosed as a result of the Coopers' failure to acquire a right of passage through the Subdivision. The mechanisms to claim a right of passage for an enclosed estate are outlined in La. C.C. art. 689 as follows:

> The owner of an estate that has no access to a public road or utility may claim a right of passage over neighboring property to the nearest public road or utility. He is bound to compensate his neighbor for the right of passage acquired and to indemnify his neighbor for the damage he may occasion.

Accordingly, well-settled jurisprudence holds that an owner of an enclosed estate is not entitled to a right of passage until the parties agree "upon the compensation to be first paid" for the value of the servitude. *See Wemple v. Eastham,* 150 La. 247, 90 So. 637 (1922). Here, the fees imposed under the DCCR are the "compensation" requested by the ETPOA. The uncontested affidavit of Ms. Benenate, the ETPOA's Director of Operations, supports that the ETPOA offered

12

the Coopers access to the Subdivision, provided that they subject their property to the DCCR, and that all of the other property owners within the Subdivision pay these DCCR fees for the right to traverse and other amenities, including the Coopers, who are the owners of other lots.[2]

The parties herein do not dispute the principal, underlying facts of this matter—namely, that the Act of Cash Sale between the Coopers and English Turn Lots did not include a reservation of easement rights; that Lot 86 was not subject to the DCCR at the time of sale; and that the ETPOA has offered the Coopers a right a right of passage in exchange for compensation in the form of ratification of the DCCR.  Based on these undisputed facts, the ETPOA met its burden of proof entitling it to summary judgment as a matter of law.  Therefore, the trial court did not err in granting the ETPOA's summary judgment motion, finding that the Coopers were not entitled to an unrestricted right of passage without first paying the compensation demanded by the ETPOA under the DCCR.

### *The Coopers' Motion for Partial Summary Judgment*

Having determined that the trial court did not err in granting the ETPOA's motion for summary judgment, and as such, that the Coopers were not entitled to the relief requested in their Petition, we pretermit discussion of the Coopers' claim that the trial court erred in denying their motion for partial summary judgment.

### DECREE

For the above-mentioned reasons, the judgment of the trial court is affirmed.

**AFFIRMED**

---

[2] Ms. Benenate's affidavit attests that '[a]ll remaining lots owned by English Turn Lots have been annexed in the subdivision" and that '[t]he Coopers are the owners of other lots in English Turn."